UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| L.Y.C.G.,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, Seattle Acting Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement, et al.<br><br>Respondents. | CASE NO. 2:26-cv-03057-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner L.Y.C.G.'s Petition for Writ of Habeas Corpus. Dkt. No. 1. Respondents[1] are Julio Hernandez, Seattle Acting Field Office Director, Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement; Markwayne Mullin, Secretary, United States Department of Homeland Security;

[1] As used elsewhere in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

Todd Blanche, U.S. Attorney General; United States Immigration and Customs Enforcement ("ICE"); United States Department of Homeland Security ("DHS"); Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"). Having reviewed the petition, Respondents' response (Dkt. No. 6), Petitioner's traverse (Dkt. No. 9), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the petition.

## I. BACKGROUND[2]

Petitioner is a native and citizen of Venezuela. Dkt. No. 8-3 (Form I-213) at 4. On October 12, 2022, Petitioner applied for admission to the United States at the Paso Del Norte, Texas, port of entry. Dkt. No. 7 (Ouk Decl.) ¶ 4. That same day, border patrol officers paroled Petitioner into the United States. *Id.* ¶ 5; Dkt. No. 8-3 at 3–4. Petitioner's parole was valid until December 12, 2022. Dkt. No. 8-1 (Form I-94) at 2. Respondents' declarant, Deportation Officer Andre S. Ouk, asserts that Petitioner was paroled "with Alternative to Detention ('ATD') conditions." Dkt. No. 7 ¶ 5. The only condition evident from the record is that Petitioner was required to report to an ICE office within 60 days of October 12, 2022. Dkt. No. 8-1 at 5. On November 3, 2022, when Petitioner reported as required to ERO in New York, he was "terminated from ATD." Dkt. No. 7 ¶ 6. No further conditions were placed on his parole, and Petitioner was allowed to remain at liberty until and beyond the expiration date of his parole. Respondents assert that "[t]here is not evidence that Petitioner's parole was ever extended." Dkt. No. 6 at 4. Be that as it may, there is also no evidence that Petitioner was ever instructed to report again to ICE.

On June 28, 2023, Petitioner submitted a Form I-589 application for asylum and for

[2] Many of the facts recounted here are based on hearsay contained within narrative portions of documents from Petitioner's immigration record, or on the declaration of Deportation Officer Andre Ouk, who does not claim to have firsthand personal knowledge of most of the facts therein (*see* Dkt. No. 7 (Ouk Decl.) ¶ 3). The Court makes no findings as to whether these are true and correct statements of fact.

Withholding of Removal to U.S. Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 7. After applying for asylum, Petitioner filed an application for employment authorization, which USCIS approved. Dkt. No. 1 ¶ 20. Petitioner was issued an Employment Authorization Document ("EAD"), which is valid from March 5, 2025, to March 5, 2027. *Id.* On July 16, 2024, Petitioner notified USCIS that he had been arrested. *Id.* ¶ 8. No criminal charges came of the arrest. *See* Dkt. No. 8-3 at 4. Petitioner does not have any history of being charged with or convicted of a criminal offense. *Id.*

On August 6, 2026, Petitioner completed an asylum interview with a USCIS asylum officer after submitting his asylum application. *See* Dkt. No. 1 ¶ 21; Dkt. No. 11-2 (Petitioner's Additional Exhibits) at 8 (USCIS "Mail-out Notice"). After the interview was completed, Petitioner was provided with a notice informing him that a decision on his application would be sent to him by mail. Dkt. No. 11-2 at 8. The same day, however, a Supervisory Asylum Officer issued Petitioner a Notice to Appear ("NTA"), which was served on Petitioner the following day. Dkt. No. 8-2 (NTA) at 2–3. The inclusion of a Notice to Appear in Immigration Court indicates that asylum was not granted by USCIS and that Petitioner's case was referred to the immigration court for removal proceedings. Petitioner's NTA notified him that he was scheduled for a Master Calendar Hearing for January 29, 2025. *Id.* at 2. Prior to his present detention, Petitioner was scheduled for multiple Master Calendar Hearings: first, a hearing on March 11, 2025, which appears to have been later rescheduled by the Immigration Court for February 3, 2026, and then a second hearing on August 10, 2026. Dkt. No. 11-2 at 12, 14, 18 (Notices of Hearings).[3] There is no indication in the record that Petitioner ever failed to attend any hearing in Immigration

[3] Oddly, the Notice of Hearing informing Petitioner of an August 10, 2026, hearing in New York was sent to Petitioner at a Brooklyn address while he was already detained at NWIPC. *See* Dkt. No. 11-2. The reasons for this are not evident from the record.

Court.

On July 8, 2026, ICE officers observed Petitioner sitting in a parked vehicle outside of a Walmart in Happy Valley, Oregon. Dkt. No. 8-3 at 3. The ICE officers ran the license plate of the car Petitioner sat in, obtained his name, and identified Petitioner as an individual without lawful status in the United States. *Id*. Prior to contacting Petitioner, the officers generated and signed a Form I-200 warrant for arrest of Petitioner. *Id*. The officers then approached Petitioner's vehicle, identified themselves as immigration enforcement, and asked Petitioner for his name. *Id*. Petitioner identified himself. *Id*. The ICE officers then detained Petitioner in handcuffs, searched his person, transported him to the Portland, Oregon, ERO office, and then transferred him to the NWIPC that same day. *Id*. At the time of his detention, Petitioner possessed his Colorado identification and his Employment Authorization Document ("EAD"). Dkt. No. 1 ¶ 23. The day of his arrest, ICE officers served Petitioner with the Form I-200 warrant for arrest (*see* Dkt. No. 8-4 (Form I-200) at 2), although the record is not clear as to when such service occurred.

After Petitioner was transferred to the NWIPC, another Master Calendar Hearing was scheduled for September 10, 2026. Dkt. No. 7 ¶ 13. He filed the instant Petition for Writ of Habeas Corpus on August 27, 2026. Dkt. No. 1. The matter is now fully briefed and ripe for the Court's review.

## II. Initial Matter

Petitioner filed his petition listing initials rather than a full name. Federal Rule of Civil Procedure 10(a) requires that the title of a complaint must name all parties in the suit. "The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). However, a party may proceed under a pseudonym "in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'"

*Does I through XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1067–1068 (9th Cir. 2000) (quoting *United States v. Doe,* 655 F.2d 920, 922 n. 1 (9th Cir. 1981)). Specifically, a court may permit a party to proceed anonymously in judicial proceedings "in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. Here, Petitioner has not sought leave to proceed using a name other than his full name. Therefore, given the stage of the case, the need to avoid further delay, and the fact that Respondents clearly know who the Petitioner is, Petitioner can correct this deficiency by either filing a notice stating his full name or a motion for leave to proceed under a pseudonym.

## III. Habeas Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## IV. Discussion

Petitioner challenges his re-detention as unlawful, arguing that Respondents violated his Fifth Amendment right to due process when he was re-detained without advance written notice and a pre-deprivation hearing. Dkt. No. 1 ¶¶ 1, 50. Respondents assert, and Petitioner does not contest, that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). *See* Dkt. No. 6 at 2; Dkt. No. 1 ¶ 22. Petitioner also requests the Court enjoin Respondents from re-detaining Petitioner without "written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no

alternatives to detention would mitigate those risks[.]" *Id*. at 17–18. The Court assesses Petitioner's claims and request for injunctive relief as follows.

**A. Constitutionality of Petitioner's Re-Detention**

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Arevalo-Hortua v. Hernandez*, No. C26-2994, 2026 WL 2797986, at *4–6 (W.D. Wash. Sept. 18, 2026); *Marquez Rujano v. U.S. Immigr. & Customs Enf't*, No. C26-325, 2026 WL 764150, at *3–4 (W.D. Wash. Mar. 18, 2026); *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Relevant to this matter is 8 U.S.C. § 1182(d)(5)(A), where parole may be granted on a case-by-case basis for "urgent humanitarian reasons or significant public benefit." If parole expires, it terminates automatically and written notice of the termination is not required. 8 C.F.R. § 212.5(e)(1)(ii). If DHS decides to terminate a noncitizen's parole, then: (1) "the purpose for which parole was authorized" must have been accomplished, or "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) the noncitizen must be provided with written notice of the termination. 8 C.F.R. § 212.5(e)(2)(i).

The Parties address their arguments on the instant petition to the *Mathews* factors. The Court agrees that *Matthews* provides the applicable test.

**1. The Private Interest Affected by the Official Action**

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (holding that a noncitizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). The

Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz*, 53 F.4th at 1199.

Petitioner argues that as an individual already released pending removal proceedings, he has a significant private interest in remaining free from detention. Dkt. No. 1 ¶¶ 39, 47. Respondents argue that "Petitioner has the same liberty interest as a person who had been stopped at the border" because as soon as his parole was terminated, he returned to the custody status from which he was paroled. Dkt. No. 6 at 6. This Court agrees with other courts from this District that, whether parole was expired or terminated, a noncitizen still has a liberty interest in being free from detention. *See, e.g.*, *Arevalo-Hortua*, 2026 WL 2797986, at *4; *Hernandez v. Scott*, No. 26-759, 2026 WL 933361, at *3 (W.D. Wash. Apr. 7, 2026); *Amatbek Uulu v. Scott*, 2026 WL 865813, at *6 (W.D. Wash. Mar. 30, 2026). Here, after Petitioner's parole expired, it is undisputed that Petitioner was allowed to remain in the community without conditions and was eventually granted employment authorization. *See* Dkt. No. 1 ¶¶ 20–21; Dkt. No. 8-3 at 3. Petitioner relied on this liberty interest by participating in American society as a law-abiding resident of the United States for nearly four years and took actions demonstrating his reliance on his ability to remain in the community. These actions included applying for and receiving work authorization, attending a required check-in with ERO, acquiring state identification and a vehicle in his name, applying for asylum, informing USCIS of his contact with law enforcement, apparently attending an asylum interview, keeping his address up to date with the Immigration Court, and presumably attending at least one Master Calendar Hearings. In totality, Petitioner's circumstance supports the conclusion that Petitioner's liberty interest is substantial, despite the fact that he was released on parole. Accordingly, the first *Mathews* factor weighs in Petitioner's favor.

**2. The Risk of Erroneous Deprivation**

As to the second *Mathews* factor, Petitioner argues that risk of erroneous deprivation was high at the time of Petitioner's detention by ICE because "his consistent compliance with appearing at the asylum office, and his ties to the community, and his lack of any criminal convictions . . . all show that his re-detention was likely not justified by flight risk or danger, and none was mentioned in the I-213 'police report.'" Dkt. No. 1 ¶ 47. Respondents argue that pre-deprivation notice was not required because Petitioner's parole had expired, and even still, USCIS issued Petitioner an NTA that gave Petitioner notice that his parole had expired. Dkt. No. 6 at 6. Respondents further argue that they followed all required procedures, and Petitioner therefore cannot demonstrate his re-detention violated his rights. *Id*. at 7. The Court will first address Respondents' argument that notice was not required and next address the argument that Petitioner was provided pre-deprivation notice.

It is true that, under 8 C.F.R. § 212.5(e)(1)(ii), notice of parole termination is not required when parole expires. But notice of parole termination is not the same as notice of re-detention, and the expiration of Petitioner's parole in 2022 is not itself part of the administrative procedure surrounding his re-detention in 2026. If anything, Respondents' actions surrounding and for several years following the expiration of Petitioner's parole informed him that he would *not* be re-detained. In the instant matter, the record indicates that Petitioner's parole expired on December 12, 2022 (Dkt. No. 8-1 at 2), and Respondents assert that it was never explicitly renewed (Dkt. No. 6 at 6–7).[4] But at the expiration of Petitioner's parole, Respondents did not

---

[4] There is some precedent for finding that Petitioner's parole was *implicitly* renewed, though the Court does not reach that question here. Upon expiration of parole, the regulation imposes requirements on the government, not the parolee, and anticipates a successive grant of parole where removal is not imminent:

> Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal

detain Petitioner or commence "any further inspection or hearing . . . under section 235 or 240" of the INA until after Petitioner's asylum interview. When Petitioner *was* placed in removal proceedings, he was not re-detained and was allowed to remain in the community while attending periodic hearings on a non-detained docket in Immigration Court. Accordingly, the expiration of Petitioner's parole was not itself any kind of notice of the deprivation of his liberty interest.

Courts in this District have found that "due process for humanitarian parole[es] requires at least that (1) the Government justify the basis for re-detention as prescribed by the statute and its implementing regulations, and (2) noncitizens are given the opportunity to be heard with the Government's basis for re-detention at a meaningful time and in a meaningful manner." *Arevalo-Hortua*, 2026 WL 2797986, at *5 (citing *Torres v. Hermosillo*, 2026 WL 145715, at *6–8 (W.D. Wash. Jan. 20, 2026)). The facts before the Court show that the notice Respondents point to was not meaningful notice of the deprivation of Petitioner's liberty and therefore risked erroneous deprivation. First, although Petitioner was issued an NTA on August 6, 2024, the NTA says nothing about Petitioner being subject to immigration detention but, rather, notifies Petitioner that he has a Master Calendar Hearing scheduled for over five months later where he would have an opportunity to "show why [he] should not be removed from the United States[.]" Dkt. No. 8-2

---

> previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the [noncitizen] be continued in custody.

8 C.F.R. § 212.5(e)(2)(i). Therefore, "[t]aken together, the applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Colmenarez v. Hernandez*, 2026 WL 850535, at *3 (W.D. Wash. Mar. 27, 2026) (citing *Dieng v. Hermosillo*, No. C26-190, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026); *see also Kozlenkko v. Hernandez*, No. C26-3147, 2026 WL 2905404, at *3 (W.D. Wash. Sept. 28, 2026).

at 2. Indeed, Petitioner appears to have attended at least one Master Calendar Hearing, on February 3, 2026.[5] Any hearing Petitioner attended brought him into direct contact with an immigration judge and an ICE attorney who chose not to have him re-detained. Petitioner was ultimately re-detained during a chance encounter with ICE officers. Nothing about the NTA he received nearly two years prior, nor the several court hearings he attended, indicated to him that he needed to be prepared for detention at *any point* before a final order was issued in his removal case, much less that he could be deprived of liberty from the sanctity of his own vehicle while going about his daily life in the parking lot of a Walmart. In other words, any "notice" Petitioner received was not notice of the deprivation of his liberty, and it also was not provided in a meaningful manner in relation to when he was detained.

**3. Government's Interest**

With respect to the third *Mathews* factor, Petitioner argues "the government did not have a legitimate interest in re-detaining [Petitioner] without a hearing, and a brief hearing . . . would only impose minimal burdens." Dkt. No. 1 ¶ 47. Respondents provide two arguments as to why this factor weighs in their favor. First, Respondents argue they have "a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law'" (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022)). This may be true, but such an interest is present in all immigration removal cases and does not mean the Government may dispense with proper re-detention procedures, especially when it fails to articulate a rationale for re-detaining a noncitizen without proper notice. *See Kozlenkko v. Hernandez*, No. C26-3147, 2026 WL 2905404, at *6 (W.D. Wash. Sept. 28, 2026) (finding third *Mathews* factor favored

---

[5] The Court basis this presumption on the fact that the record includes a notice of this hearing, no notice that it was cancelled or rescheduled, and no suggestion that Petitioner ever missed a hearing or was ordered removed in absentia.

petitioner who was on parole and re-detained where "the Government articulates no reason for revoking Petitioner's parole that might support an interest in detaining him without notice.")) *Arevalo-Hortua*, 2026 WL 2797986, at *5 (finding third *Mathews* factor favored petitioner who was on parole where respondents "bypass[ed] basic procedural protections" and "identified no legitimate interest that would justify re-detaining Petitioners without pre-detention notice and a hearing."). Next, Respondents argue that "The government likewise has an interest in protecting immigration proceedings from unnecessary delay, especially considering Congress's purpose for enacting Section 1225(b)." Dkt. No. 6 at 8–9. As Petitioner points out, pre-deprivation hearings impose minimal burdens. Dkt. No. 1 ¶ 47; *see also Singh v. Noem*, No. C26-450, 2026 WL 607766, at *2 (W.D. Wash. Mar. 4, 2026) (finding pre-deprivation hearings "routine" and a "marginal administrative burden"). Further, such an argument is unconvincing where Petitioner's initial Master Calendar Hearing appears to have been held nearly eighteen months from the date of the NTA. By comparison, any "delay" that would have been caused by providing Petitioner with proper notice and an opportunity to respond would have been minimal. Indeed, detaining Petitioner may have created a *delay* in removal proceedings: Petitioner's first detained Master Calendar appears to have been scheduled for September 10, 2027—a month after the August 10, 2026, hearing that he would have been required to attend if not for his detention. Respondents cannot now claim the need for avoiding delay without also proving that past delays were not of their own doing. Accordingly, Respondents have not identified any legitimate interest in re-detaining Petitioner without notice and an opportunity to be heard. Therefore, the third *Mathews* factor weighs in Petitioner's favor.

* * *

In sum, the Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, Respondents' re-detention of Petitioner without proper notice and an opportunity to

be heard violated his rights under the Fifth Amendment to the United States Constitution. The Court finds that the remedy for such a violation is release. *See, e.g.*, *Arevalo-Hortua*, 2026 WL 2797986, at *7 ((ordering release where re-detention of humanitarian parolee violated due process); *Hernandez*, 2026 WL 933361, at *3–4 (same); *Amatbek Uulu*, 2026 WL 865813, at *6 (same).

**B. Injunctive Relief**

Petitioner seeks injunctive relief, requesting that the Court "Immediately and permanently enjoin Respondents from re-detaining Petitioner during the pendency of his removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 1 at 17–18.

**1. Injunctive Relief Legal Standard**

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Factors three and four of the *eBay* analysis merge when the Government is the party opposing injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has treated the first and second factors of the *eBay* test as satisfied where the party requesting injunctive relief can demonstrate that "it is likely to suffer irreparable injury that cannot be redressed by an award of damages," whether or not such injury has already occurred. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018). Petitioner addresses and satisfies each factor. *See* Dkt. No. 1 ¶¶ 44–46, 48.

**2. Petitioner Meets the Factors for Injunctive Relief**

With respect to the first factor, "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Other Courts in this District have found that Respondents' revoking release of a Petitioner who was paroled without notice and an opportunity to respond violated due process. *See Arevalo-Hortua*, 2026 WL 2797986, at *7 (ordering release where re-detention of humanitarian parolee without proper notice or pre-deprivation hearing violated due process); *Hernandez*, 2026 WL 933361, at *3–4 (same). Additional cases from this District show Respondents violating due process in their re-detention of noncitizens who were released on parole by not providing sufficient notice. *See, e.g.*, *Tobinson Melendez v. Warden*, No. C26-2600, Dkt. No. 17 at 2, 10 (W.D. Wash. Oct. 5, 2026) (finding Petitioner on parole who was re-detained without proper notice violated due process); *Kozlenkko*, 2026 WL 2905404, at *6; *Amatbek Uulu*, 2026 WL 865813, at *6–7. Because Petitioner was not given proper notice or given an opportunity to respond, and the Court is aware of numerous examples of Respondents conducting re-detentions of individuals released on parole without first providing due process, the Court is convinced that a violation is likely to recur absent injunctive relief. Plaintiff has demonstrated that he has and will likely continue to suffer irreparable injury. As to the second factor, any monetary damages would be inadequate to compensate for being detained for months in violation of due process. With respect to the third and fourth *eBay* factors, "it is 'always in the public interest to prevent the violation of a party's constitutional rights.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)). What is more, in the immigration context, the Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering[.]'" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). Accordingly, the

balance of hardships and public interest weigh in Petitioner's favor.

Accordingly, the Court orders that prior to any re-detention of Petitioner, Respondents must comply with due process and 8 C.F.R. § 212.5(e), by providing Petitioner with notice of re-detention and an opportunity to respond.

## V. CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1) Petitioner SHALL file either a notice stating his full name or a motion for leave to proceed under a pseudonym **within fourteen (14) days** of this Order.

(2) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention within **twenty-four (24) hours** of this Order under appropriate conditions of release; and

(b) SHALL submit to the Court, within **forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(3) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL NOT re-detain Petitioner, without first complying with both due process and 8 C.F.R. § 212.5(e), by providing notice and an opportunity to respond.

(4) Upon Petitioner's release, Respondents SHALL return to Petitioner his property, including personal identification documents (other than Petitioner's passport) and employment authorization documents.

(5) Any motion requesting fees should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 8th day of October, 2026.

Tana Lin
United States District Judge